UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

VANESSA ARAUZ, on Her Own Behalf and as )
Mother and Next Friend of AARON SANCHEZ, )
and VICTOR JOSE, )
                               )
                  Plaintiffs, )
                               )
    -against- )
                               )
THE CITY OF NEW YORK; NEW YORK CITY )
POLICE DETECTIVE KELVIN GLOVER, Shield )
No. 871; POLICE SERGEANT JOHN ADORNO, )
Shield No. 1330; POLICE DETECTIVE )
KENNETH TUCKER, Shield No. 7980; POLICE )
LIEUTENANT JAMES DONOVAN; POLICE )
DETECTIVE KENNETH BAKER, Shield No. )
5651; POLICE DETECTIVE GARY PORTER, )
Shield No. 625; POLICE DETECTIVE )
ALEJANDER OLAN, Shield No. 430; POLICE )
CAPTAIN BRIAN GILL; OFFICER THOMAS )
DEMKIW, Shield No. 4600; JOHN DOE )
"GHOST" DETECTIVE; POLICE DETECTIVE )
EDWARD FRENCH, Shield No. 367; JOHN )
DOES and RICHARD ROES, )
                               )
                 Defendants. )
---------------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**14 Civ. 6393 (SHS)**

## PRELIMINARY STATEMENT

1.       This is a civil action in which the plaintiffs, VANESSA ARAUZ, on Her Own

Behalf and as Mother and Next Friend of AARON SANCHEZ, and VICTOR JOSE, seek relief

for the defendants' violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983; by the United States Constitution, including its Fourth and Fourteenth Amendments

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees,

and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is

conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this

being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs filed timely Notices of Claim with the Comptroller of the City of New

York on June 17, 2013, within 90 the incidents complained of herein, and on August 2, 2013

concerning their claims for malicious prosecution, within 90 days of being informed that the

Bronx District Attorney's office had declined to prosecute them.  More than 30 days have elapsed

since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected

or refused.

**PARTIES**

7.      Plaintiffs VANESSA ARAUZ, on Her Own Behalf and as Mother and Next Friend of AARON SANCHEZ, and VICTOR JOSE at all times relevant herein were residents of the State of New York, County of the Bronx.  AARON SANCHEZ at the time of the incident was twelve years old.

8.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.      Defendants NEW YORK CITY POLICE DETECTIVE KELVIN GLOVER, POLICE SERGEANT JOHN ADORNO, POLICE DETECTIVE KENNETH TUCKER, POLICE LIEUTENANT JAMES DONOVAN, POLICE DETECTIVE KENNETH BAKER, POLICE DETECTIVE GARY POKTER, POLICE DETECTIVE ALEJANDER OLAN, POLICE CAPTAIN BRIAN GILL, POLICE OFFICER THOMAS DEMKIW, JOHN DOE "GHOST" DETECTIVE, POLICE DETECTIVE EDWARD FRENCH, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and

3

functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

OF NEW YORK and the New York City Police Department, and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.  Defendants NEW YORK CITY POLICE DETECTIVE KELVIN GLOVER, POLICE

SERGEANT JOHN ADORNO, POLICE DETECTIVE KENNETH TUCKER, POLICE

LIEUTENANT JAMES DONOVAN, POLICE DETECTIVE KENNETH BAKER, POLICE

DETECTIVE GARY PORTER, POLICE DETECTIVE ALEJANDER OLAN, POLICE

CAPTAIN BRIAN GILL, POLICE OFFICER THOMAS DEMKIW, JOHN DOE "GHOST"

DETECTIVE, POLICE DETECTIVE EDWARD FRENCH, and JOHN DOES are sued

individually.

      10.     Defendants NEW YORK CITY POLICE DETECTIVE KELVIN GLOVER,

POLICE SERGEANT JOHN ADORNO, POLICE DETECTIVE KENNETH TUCKER,

POLICE LIEUTENANT JAMES DONOVAN, POLICE DETECTIVE KENNETH BAKER,

POLICE DETECTIVE GARY PORTER, POLICE DETECTIVE ALEJANDER OLAN,

POLICE CAPTAIN BRIAN GILL, JOHN DOE "GHOST" DETECTIVE, POLICE

DETECTIVE EDWARD FRENCH, and RICHARD ROES are and were at all times relevant

herein duly appointed and acting supervisory officers, servants, employees and agents of THE

CITY OF NEW YORK and/or the New York City Police Department, responsible for the

training, retention, supervision, discipline and control of subordinate members of the police

department under their command.  Defendants are and were at all times relevant herein acting

under color of state law in the course and scope of their duties and functions as supervisory

4

officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting

for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW

YORK and the New York City Police Department, and were otherwise performing and engaging

in conduct incidental to the performance of their lawful functions in the course of their duties.

Defendants NEW YORK CITY POLICE DETECTIVE KELVIN GLOVER, POLICE

SERGEANT JOHN ADORNO, POLICE DETECTIVE KENNETH TUCKER, POLICE

LIEUTENANT JAMES DONOVAN, POLICE DETECTIVE KENNETH BAKER, POLICE

DETECTIVE GARY PORTER, POLICE DETECTIVE ALEJANDER OLAN, POLICE

CAPTAIN BRIAN GILL, JOHN DOE "GHOST" DETECTIVE, POLICE DETECTIVE

EDWARD FRENCH, and RICHARD ROES are sued individually.

## STATEMENT OF FACTS

11.     On May 15, 2013, approximately 6:45 a.m., Plaintiffs were in their home at 1501

Undercliff Ave., # 2F, Bronx, NY.

12.     Plaintiff VANESSA ARAUZ heard a loud bang on the front door to her home.

13.     When Plaintiff VANESSA ARAUZ went to the dining area of her home in

response to the loud bang, she observed a saw cutting through the front door to her home.

14.     The front door to her home came down, and numerous (on information and belief

more than fifteen) JOHN DOES police officers - on information and belief from the NYPD's

Narcotics Borough Bronx, and including Defendants NEW YORK CITY POLICE DETECTIVE

KELVIN GLOVER, POLICE SERGEANT JOHN ADORNO, POLICE DETECTIVE

KENNETH TUCKER, POLICE LIEUTENANT JAMES DONOVAN, POLICE DETECTIVE

KENNETH BAKER, POLICE DETECTIVE GARY PORTER, POLICE DETECTIVE

5

ALEJANDER OLAN, POLICE CAPTAIN BRIAN GILL, POLICE OFFICER THOMAS

DEMKIW, and POLICE DETECTIVE EDWARD FRENCH – came rushing into Plaintiffs'

apartment.

15.     On information and belief JOHN DOE "GHOST" DETECTIVE was also involved

in the police activity inside of Plaintiffs' apartment, although it is unknown if he / she entered the

apartment or remained outside.

16.     A number of the JOHN DOES officers were holding shields, and a number of them

were armed with assault rifles with laser sights.

17.     One of the JOHN DOES officers pointed an assault rifle at Plaintiff VANESSA

ARAUZ's head.

18.     Plaintiff VANESSA ARAUZ tried as best she could to tell the officers that they

must be making a mistake, and that they must be in the wrong apartment, but the JOHN DOES

officers' response was to tell her, in sum and substance, to shut the fuck up and tell her to get on

the floor, and to push her down.

19.     Plaintiff VANESSA ARAUZ and her twelve year old son, Plaintiff AARON

SANCHEZ, got down on the floor.

20.     Plaintiff AARON SANCHEZ was hysterical and crying with fear, and was told to

lie down on the floor on his stomach.

21.     Plaintiff VANESSA ARAUZ, while handcuffed on the floor of her home, had a

JOHN DOE police officer stomp on the floor next to her head, and tell her to "shut the fuck up,"

and otherwise spoke and acted abusively towards her.

22.     The JOHN DOES officers unnecessarily broke down the door (it was unlocked,

6

and to open it they needed only to turn the doorknob) to Plaintiff VICTOR JOSE's bedroom.

23.   The JOHN DOES officers dragged Plaintiff VICTOR JOSE violently from his bed, and pressed an assault rifle to his head.

24.   Plaintiff VICTOR JOSE's face hit the headboard of his bed as the JOHN DOES officers dragged him from his bed.

25.   The JOHN DOES officers proceeded to ransack Plaintiffs' home for approximately an hour and a half.

26.   The JOHN DOES officers pulled items from all the closets and dumped them on the floor.

27.   Plaintiff VICTOR JOSE's mattress was slashed open, and the JOHN DOES officers broke his bed.

28.   Other of Plaintiffs' furniture was sliced open and destroyed as well.

29.   Two of the JOHN DOES officers, admiring some of the nice things in Plaintiffs' nicely kept home, commented, in sum and substance, "look what drug money buys."

30.   Plaintiffs have no connection whatsoever with the drug trade.

31.   There are apparently, on information and belief, some other apartments in Plaintiffs' building that have some connection with the drug trade.

32.   Plaintiff VICTOR JOSE was also placed in handcuffs.

33.   Plaintiffs VANESSA ARAUZ and VICTOR JOSE were also frightened, and crying.

34.   At some point Plaintiffs VANESSA ARAUZ, AARON SANCHEZ, and VICTOR JOSE, along with a visitor to their home who was also present, were placed in chairs against the

wall by the JOHN DOES officers.

35.    When Plaintiff VANESSA ARAUZ asked to see a warrant, she was told to shut the fuck up.

36.    When Plaintiff VICTOR JOSE stated that the JOHN DOES officers needed to present a warrant, he was ignored.

37.    The JOHN DOES officers allowed Plaintiff AARON SANCHEZ to be left in the custody of a neighbor, while Plaintiffs VANESSA ARAUZ and VICTOR JOSE were placed, handcuffed with excessive tightness, in a police van.

38.    The visitor to Plaintiff's home was also placed in the police van.

39.    Despite their requests, the JOHN DOES officers did not allow Plaintiffs VANESSA ARAUZ and VICTOR JOSE the opportunity to put on proper clothing before being placed in the police van.

40.    Plaintiff VANESSA ARAUZ was forced to enter the police van wearing revealing nightclothes.

41.    Plaintiff VICTOR JOSE was forced to enter the police vehicle wearing his boxer shorts.

42.    Both Plaintiffs VANESSA ARAUZ and VICTOR JOSE were wearing house slippers on their feet.

43.    Plaintiffs VANESSA ARAUZ and VICTOR JOSE spent approximately five hours in the police van.

44.    By approximately 9 a.m. Plaintiff VANESSA ARAUZ's hands became very swollen due to the excessively tight handcuffs.

45.     Plaintiff VANESSA ARAUZ asked the JOHN DOES transport officers - on information and belief Defendants PORTER and BAKER - to adjust her handcuffs.

46.     Plaintiff VICTOR JOSE - whose hands were also getting red due to the excessively tight handcuffs - also told the JOHN DOES transport officers that his mother's hands were getting swollen, and he also asked them to adjust his mother's handcuffs.

47.     The JOHN DOES transport officers ignored Plaintiffs' VANESSA ARAUZ's and VICTOR JOSE's requests to loosen the handcuffs, and said that they would be at the precinct in no time.

48.     The JOHN DOES transport officers travelled around the Bronx for hours, with Plaintiffs VANESSA ARAUZ and VICTOR JOSE handcuffed with excessive tightness in the back of the van.

49.     The JOHN DOES transport officers first stopped to have breakfast for approximately 40 minutes while Plaintiffs VANESSA ARAUZ and VICTOR JOSE remained alone in the van, handcuffed with excessively tight handcuffs.

50.     The JOHN DOES transport officers then proceeded to drive around the Bronx for hours, picking up other arrestees and putting them in the van.

51.     At approximately 12:30 p.m. or so, Plaintiffs VANESSA ARAUZ and VICTOR JOSE finally arrived at the NYPD 46th precinct.

52.     At the precinct Plaintiff VANESSA ARAUZ asked a JOHN DOE Sergeant to loosen her handcuffs, and the JOHN DOE Sergeant told her to hold on.

53.     Plaintiffs VANESSA ARAUZ and VICTORE JOSE by that point were also desperate to use the bathroom.

54.     A female JOHN DOE police officer watched Plaintiff VANESSA ARAUZ while she urinated, and strip searched Plaintiff VANESSA ARAUZ.

55.     The female JOHN DOE police officer made Plaintiff VANESSA ARAUZ pull down her pajama shorts, and kneel down and cough.

56.     On information and belief Plaintiff's strip search was authorized by Defendant SERGEANT ADORNO.

57.     At approximately 1:45 p.m. Plaintiffs were each issued Desk Appearance Tickets (DATs), commanding them to appear in court on July 23, 2013 to answer charges of violation of New York State Penal Law § 221.10 (2), Criminal Possession of Marihuana in the Fifth Degree.

58.     The DATs were issued by Defendant POLICE DETECTIVE KELVIN GLOVER.

59.     Plaintiffs VANESSA ARAUZ and VICTOR JOSE had to walk home for more than three miles from the precinct dressed in their nightclothes.

60.     When they arrived back home, in addition to observing the wanton destruction of their home and possessions by the JOHN DOES officers, Plaintiffs VANESSA ARAUZ and VICTOR JOSE also noticed that numerous items had been stolen from their home by the JOHN DOES officers.

61.     Among the items that the JOHN DOE officers stole from Plaintiffs' apartment were a Merm workout jacket worth approximately $300, an "insanity" work out series of videos worth approximately $250, and a pair of Michael Jordan sneakers, worth over $200.

62.     These stolen items were not listed on any property voucher provided to Plaintiffs, and they have never been recovered.

63.     Meat from Plaintiffs' freezer, and other foodstuffs, that the JOHN DOES officers

10

had thrown and scattered about the floor of the apartment, were also ruined.

64.     As a result of a report made, on information and belief by the JOHN DOES officers, Plaintiff VANESSA ARAUZ was notified by the New York City Administration for Children's Services (ACS) that she was the subject of a report of suspected child abuse or maltreatment received by the New York State Child Abuse and Maltreatment Register, and that the report had been transmitted to the Bronx County Child Protective Service for investigation.

65.     There was no possible basis for the commencement of a child protective services investigation concerning Plaintiff VANESSA ARAUZ, who is a loving and unremittingly responsible mother of her minor son, Plaintiff AARON SANCHEZ.

66.     At some point Plaintiff VANESSA ARAUZ was informed by the caseworker for ACS – following an investigation that involved the caseworker going to Plaintiff AARON SANCHEZ's school, to his baseball game, and speaking with his father - that ACS' investigation was closed as unfounded.

67.     On information and belief, after Plaintiffs were removed from their home the JOHN DOES officers brought dogs into their apartment to continue searching it.

68.     When Plaintiffs reported to Court on July 23, 2013, as they had been directed to do by the DATs issued to them by Defendant POLICE DETECTIVE KELVIN GLOVER, they were informed that the District Attorney's office had declined to prosecute them on June 12, 2013.

69.     On the "Affidavit in Support of Declining / Deferring Prosecution" that was provided to each of Plaintiffs VANESSA ARAUZ and VICTOR JOSE at the courthouse, the District Attorney's office states that Defendant POLICE DETECTIVE KELVIN GLOVER had

failed to appear when notified, and that "without the cooperation of the arresting officer, the People cannot draft an accusatory instrument or meet their burden of proof at trial, and as such the charges against defendant must be dismissed."

70.     A property voucher provided to Plaintiff VICTOR JOSE for $106 in cash that was seized as arrest evidence states that it was seized during the execution of Bronx search warrant 13-250, which was signed by the Hon. Judge April Newbauer.

71.     That money has never been returned to Plaintiff VICTOR JOSE.

72.     On information and belief, the search warrant was not issued upon probable cause.

73.     On information and belief, the JOHN DOES officers who applied for the warrant should not have done so, as there was not reliable and trustworthy information to establish probable cause to believe that Plaintiffs were involved in the drug trade.

74.     On a number of occasions prior to May 15, 2013, JOHN DOES officers knocked on Plaintiffs' door and stated that they had received a call stating that drugs were being sold from Plaintiffs' apartment.

75.     On those occasions, the officers never asked to, nor did they, enter Plaintiffs' apartment.

76.     When the JOHN DOES officers, on those prior occasions, saw twelve year old Plaintiff AARON SANCHEZ, they simply left.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

77.     The plaintiffs incorporate by reference the allegations set forth in all previous

12

Paragraphs as if fully set forth herein.

78.     By their conduct and actions in falsely arresting and imprisoning plaintiffs,

assaulting and battering plaintiffs, trespassing upon plaintiffs and their homes, unlawfully

obtaining a warrant for the search of plaintiffs' homes and executing it improperly, converting

plaintiffs' property, maliciously prosecuting plaintiffs, abusing process against plaintiffs,

unreasonably prolonging plaintiffs' detention and subjecting plaintiffs to unreasonable conditions

of confinement, violating rights to equal protection of, violating rights to substantive due process

of plaintiffs, invading plaintiffs' privacy and dignity, strip searching plaintiff VANESSA ARAUZ,

failing to intercede on behalf of the plaintiffs and in failing to protect the plaintiffs from the

unjustified and unconstitutional treatment they received at the hands of other defendants,

Defendants GLOVER, ADORNO, TUCKER, DONOVAN, BAKER, PORTER, OLAN, GILL,

DEMKIW, JOHN DOE "GHOST" DETECTIVE, FRENCH, DOES and/or ROES, acting under

color of law and without lawful justification, intentionally, maliciously, and with a deliberate

indifference to or a reckless disregard for the natural and probable consequences of their acts,

caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42

U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth

amendments.

79.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,

experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

80.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

81.    By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants GLOVER, ADORNO, TUCKER, DONOVAN, BAKER, PORTER, OLAN, GILL, JOHN DOE "GHOST" DETECTIVE, FRENCH, and/or ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

82.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

83.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

84.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

87.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of unreasonably and excessively prolonging the transport of arrestees in their custody.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

88.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of engaging in illegal and harassing raids and arrests, particularly upon people of Hispanic or African-American ethnicity, and failing to assure that proper procedures were implemented regarding the obtaining of and /or execution of search warrants and

the use of information garnered through confidential informants, and of failing to properly train, supervise or discipline police supervisors and subordinate officers to prevent them from failing to assure that proper procedures were implemented.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

89.     Defendant the CITY OF NEW YORK failed to provide any formal training to its police officers, either during the Police Academy or after, on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of search warrants.

90.     Defendant the CITY OF NEW YORK maintained no written guidelines on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of search warrants.

91.     Defendant the CITY OF NEW YORK knew to a moral certainty that its police officers would be required to execute search warrants, and the City empowered them to do so, and therefore the need to train officers in the constitutional limitations on causing unnecessary or excessive damage during the execution of a search warrant was obvious.

92.     The failure of defendant the CITY OF NEW YORK to train its police officers or provide guidelines to its officers in the constitutional prohibitions on causing unnecessary and excessive damage during the execution of search warrants amounts to deliberate indifference to the rights of persons with whom the police come into contact.

93.     Defendant the CITY OF NEW YORK implemented, enforced, encouraged, sanctioned and/or ratified policies, practices, and/or customs of failing to train its police officers and failing to implement guidelines on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of search warrants.

16

94.     By implementing, enforcing, encouraging, sanctioning and/or ratifying these policies, practices, and/or customs, defendant the CITY OF NEW YORK caused the Plaintiffs to be subjected to excessive and/or unnecessary destruction of property during the search of their home, and deprived of property without due process of law, in violation of their rights guaranteed to every citizen of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

95.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

96.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

97.     The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

98.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### ASSAULT AND BATTERY

99.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

100.    By the actions described above, defendants did inflict assault and battery upon the plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT

102.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103.    By the actions described above, defendants caused plaintiffs to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

104.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

105.    The plaintiffs incorporate by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

106.    By the actions described above, defendants violated plaintiffs' rights to equal

protection of law.  The acts and conduct of the defendants were the direct and proximate cause of

injury and damage to the plaintiffs and violated their statutory and common law rights as

guaranteed by the laws and Constitution of the State of New York.

107.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### MALICIOUS PROSECUTION

108.    The plaintiffs incorporate by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

109.    By the actions described above, defendants maliciously prosecuted plaintiffs

VANESSA ARAUZ and VICTOR JOSE without any right or authority to do so.  The acts and

conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs

and violated their statutory and common law rights as guaranteed by the laws and Constitution of

the State of New York.

110.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

19

experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

111.   The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

112.   By the conduct and actions described above, defendants employed regularly issued process against plaintiffs VANESSA ARAUZ and VICTOR JOSE, compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113.   As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## TRESPASS

114.   The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

115.   The defendants willfully, wrongfully and unlawfully trespassed upon plaintiffs'

20

homes and upon the persons of plaintiffs.

116.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

117.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

118.    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused severe emotional distress to plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

119.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

120.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    The defendants, jointly and severally, negligently caused injuries, emotional

21

distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

122.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

123.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

124.    Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

125.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## CONVERSION

126.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

127.    Through their actions in causing a serious interference with, and/or in seriously

interfering with, plaintiffs' right of possession in their property, and/or in exercising unauthorized possession and/or ownership over plaintiffs' property, defendants wrongfully converted plaintiffs' property. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

128.   As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## CONSTITUTIONAL TORT

129.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

130.   Defendants, acting under color of law, violated plaintiffs' rights pursuant to §§ 6, 11, and 12 of the New York State Constitution.

131.   A damages remedy here is necessary to effectuate the purposes of §§ 6, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

132.   As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
            July 10, 2015

                                    _____
                                    JEFFREY A. ROTHMAN, Esq.
                                    Law Office of Jeffrey A. Rothman
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980

                                    Attorney for Plaintiffs